## RECORD NOS. 12-2232(L); 12-2264 XAP

In The

# United States Court of Appeals

For The Fourth Circuit

## STANLEY MARVIN CAMPBELL, Trustee in Bankruptcy for ESA Environmental Specialist, Inc.,

*Plaintiff,*

and

### PROSPECT CAPITAL CORPORATION,

*Plaintiff – Appellant/Cross-Appellee,*

**v.**

## ADKISSON, SHERBERT & ASSOCIATES,

*Defendant – Appellee/Cross-Appellant,*

and

### NATHAN M. BENDER; HOULIHAN SMITH & COMPANY, INC.; CHARLES J. COLE; JACOB COLE; SANDRA DEE COLE; DAVID C. EPPLING; MICHAEL ANTHONY HABOWSKI; TRACEY HAWLEY; JOHN M. MITCHELL; DENNIS M. MOLESEVICH; HOULIHAN SMITH; SHELTON SMITH; SUNTRUST BANKS, INC.; CHERRY BEKAERT AND HOLLAND LLP; ELLIOT & WARREN; CHESTER J. BANULL,

*Defendants.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

————————

### REDACTED BRIEF OF APPELLEE/CROSS-APPELLANT

————————

Frederick K. Sharpless
SHARPLESS & STAVOLA, PA
200 South Elm Street
Post Office Box 22106
Greensboro, North Carolina 27420
(336) 333-6384

*Counsel for Appellee/Cross-Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____          Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
          (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO

2.      Does party/amicus have any parent corporations?                                YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                YES      NO
        If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____    _____
(signature)    (date)

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2012, I electronically filed the **DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. G. Gray Wilson
gwilson@whclawfirm.com
Mr. Gregory James Krock
Gregory.krock@bipc.com
Mr. H. Marc Tepper
Marc.tepper@bipc.com
Mr. Christopher P. Schueller
Christopher.Schueller@bipc.com
Mr. Douglas R. Ghidina
dougghidina@mvalaw.com
Mr. Karl C. Huth, IV
khuth@prospectstreet.com
Mr. Robert C. Bowers
bobbybowers@mvalaw.com
*Attorneys for Plaintiff*

Mr. A. Burton Shuford
bshuford@thebaingroup.net
*Attorney for Stanley Marvin Campbell, Trustee in Bankruptcy for ESA Environmental Specialist, Inc*

Ms. Heather C. White
heather.white@smithmoorelaw.com
*Attorney for Dennis M. Molesevich*

Mr. William H. Major, III
wmajor@hplegal.com
Mr. William L. Esser, IV
willesser@parkerpoe.com
Mr. David H. Wilson
dwilson@hplegal.com
*Attorneys for Defendant SunTrust Banks, Inc.*

Mr. Justin J. D'Elia
jjdelia@duanemorris.com
Mr. Richard P. Darke
Rpdarke@duanemorris.com
Mr. Joseph W. Moss, Jr.
jmoss@ebcmlaw.com
*Attorneys for Defendant Houlihan Smith*

Mr. Richard J. Lutzel
rlutzel@lutzelgandy.com
*Attorney for Sandra Dee Cole*

/s/ Frederick K. Sharpless
N.C. State Bar No. 12551
Attorney for Defendant Adkisson Sherbert & Associates
SHARPLESS & STAVOLA, P.A.
Post Office Box 22106
Greensboro, North Carolina 27420
Telephone: 336/333-6384
Facsimile: 336/333-6399
fks@sharpless-stavola.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iv

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF THE ISSUES PROSPECT CAPITAL'S APPEAL....................1

STATEMENT OF THE ISSUES
ADKISSON SHERBERT ASSOCIATES, P.A.'S CROSS-APPEAL......................2

STATEMENT OF THE CASE...................................................................................2

STATEMENT OF FACTS .........................................................................................5

SUMMARY OF THE ARGUMENT .......................................................................15

STANDARD OF REVIEW ......................................................................................19

ARGUMENT ...........................................................................................................20

    I.     THE DISTRICT COURT CORRECTLY FOUND THAT THE
           PARTIES REACHED A COMPLETE SETTLEMENT
           AGREEMENT ON NOVEMBER 22, 2011 .......................................20

           A.    The objectively manifested intentions of the parties show
                that the parties reached a complete settlement agreement
                on November 22, 2011............................................................21

           B.    The District Court's finding that the parties reached a
                complete settlement agreement is entitled to great
                deference to the extent that it rests upon assessments of
                witness credibility and resolution of conflicting
                permissible inferences.............................................................33

i

C.     The terms and conditions of the settlement agreement can readily be determined, as they are set forth in the settlement communications and witness testimony considered by the District Court ...............................................36

II.     THE DISTRICT COURT CORRECTLY CONSIDERED EVIDENCE OF SETTLEMENT COMMUNICATIONS THAT SHOW THE PARTIES REACHED A BINDING SETTLEMENT AGREEMENT ON NOVEMBER 22, 2011 ............37

A.     The District Court was required to conduct an evidentiary hearing to determine whether the parties reached a complete settlement agreement on November 22, 2011 ...........38

B.     Neither the parol evidence rule nor the provisions of a written settlement agreement that Plaintiff refused to sign precluded Adkisson Sherbert from submitting evidence that the parties reached a binding settlement agreement on November 22, 2011 ....................................................................41

III.     THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFF IS JUDICIALLY ESTOPPED FROM DENYING THAT THE PARTIES AGREED TO THE MATERIAL TERMS OF A SETTLEMENT ...........................................................44

IV.     THE TRIAL COURT CORRECTLY CONCLUDED THAT ADKISSON SHERBERT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT WAS NOT BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL ...................................49

A.     No final judgment on the merits ...............................................49

B.     Issue in question not identical...................................................51

C.     Parties not in privity.................................................................52

ii

V.      THE DISTRICT COURT ERRED WHEN IT DENIED
        ADKISSON SHERBERT'S REQUEST THAT
        PROSPECT CAPITAL'S ACTION BE DISMISSED
        PURSUANT TO F. R. CIV. P. 41 IN CONSEQUENCE
        OF THE SETTLEMENT AGREEMENT REACHED ON
        NOVEMBER 22, 2011 ............................................................53

VI.     IF THIS COURT REVERSES THE DISTRICT COURT,
        THEN IT SHOULD ORDER THE COURT TO DECIDE
        ADKISSON SHERBERT'S MOTION TO DISMISS ON
        THE MERITS ..........................................................................54

CONCLUSION ....................................................................................55

REQUEST FOR ORAL ARGUMENT ..................................................55

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Johns-Manville Corp.*,
  876 F.2d 702 (9th Cir.1989) .......................................................................53

*Alexander v. Industries of the Blind*, *Inc.*,
  901 F.2d 40 (4th Cir. 1990) ......................................................16, 21, 38, 51

*Anderson v. City of Bessemer City*, *North Carolina*,
  470 U.S. 564, 105 S. Ct. 1504, 1513, 84 L. Ed. 2d 518 (1985) ...................34

*Bailey v. Westmoreland*,
  251 N.C. 843, 112 S.E.2d 517 (1960) ...........................................................42

*Casualty Co. v. Teer Co.*,
  250 N.C. 547, 109 S.E.2d 171 (1959) ...........................................................21

*Chappell v. Roth*,
  353 N.C. 690, 548 S.E.2d 499 (2001) .....................................................30, 31

*Charbonnages de France v. Smith*,
  597 F.2d 406 (4th Cir. 1979) .........................................................................24

*Cooper Tire & Rubber Co. v. Farese*,
  2008 WL 4285546 (N.D. Miss. Sept. 12, 2008) ...........................................40

*Davis v. Williams*,
  588 F.2d 69 (4th Cir. 1978) ...........................................................................20

*Edwards v. Aetna Life Ins. Co.*,
  690 F.2d 595 (6th Cir. 1982) .........................................................................45

*Foote & Davies*, *Inc. v. Arnold Craven*, *Inc.*,
  72 N.C. App. 591, 324 S.E.2d 889 (1985) ....................................................34

iv

*Ford v. Gordon*,
   990 S.W.2d 83 (Mo. Ct. App. 1999) ...........................................................40

*Gilbert v. United States*,
   479 F.2d 1267 (2d Cir. 1973) ....................................................................34

*Golding v. Floyd*,
   261 Va. 190, 539 S.E.2d 735 (2001) .........................................................28

*Harris v. Ray Johnson Const. Co., Inc.*,
   139 N.C. App. 827, 534 S.E.2d 653 (2000) ....................................21, 34, 47

*Hensley v. Alcon Laboratories, Inc.*,
   277 F.3d 535 (4th Cir. 2002) ..............................................................*passim*

*Hilliard v. Thompson*,
   81 N.C. App. 404 S.E.2d 589 (1986) ....................................................26, 27

*Hoffstot v. Dickinson*,
   166 F.2d 36 (4th Cir. 1948) .......................................................................33

*Jaffe v. Accredited Sur. & Cas. Co., Inc.*,
   294 F.3d 584 (4th Cir. 2002) ................................................................ 19-20

*John S. Clark Co., Inc. v. United Nat'l. Ins. Co.*,
   304 F. Supp. 2d 758 (M.D. N.C. 2004) ......................................................32

*Kennon v. Slipstreamer, Inc.*,
   794 F.2d 1067 (5th Cir. 1986) ...................................................................39

*Kornegay v. Aspen Asset Group, LLC*,
   204 N.C. App. 213, 693 S.E.2d 723 (2010) ...........................................25, 27

*Laing v. Lewis*,
   142 N.C. App. 336, 542 S.E.2d 301 (2001) ...........................................25, 42

*Ledford v. Asheville Housing Authority*,
   125 N.C. App. 597, 482 S.E.2d 544, *disc. rev. denied*,
   346 N.C. 280, 487 S.E.2d 550 (1997) ........................................................50

v

*Lux v. Judd*,
    651 F.3d 396 (4th Cir. 2011) ........................................................55

*McDonald v. Skeen*,
    152 N.C. App. 228, 567 S.E.2d 209 (2002), *rev. denied*,
    356 N.C. 437, 571 S.E.2d 222 (2002) ........................................49

*Millner v. Norfolk & Western Railway Co.*,
    643 F.2d 1005 (4th Cir. 1981) ...............................................38, 53

*Milton v. Thompson*,
    170 N.C. App. 176, 611 S.E.2d 474 (2005) ................................50

*Minyard Enterprises, Inc. v. Southeastern Chemical & Solvent Co.*,
    184 F.3d 373 (4th Cir. 1999) ......................................................19

*Moore v. Beaufort County, N.C.*,
    936 F.2d 159 (4th Cir. 1991) .........................................20, 22, 24

*Moore v. Young*,
    260 N.C. 654, 133 S.E.2d 510 (1963) ........................................52

*Myers v. Stephenson*,
    748 F.2d 202 (4th Cir. 1984) ......................................................54

*N.C. Nat'l Bank v. Wallens*,
    26 N.C. App. 580, 217 S.E.2d 12 (1975), *cert. denied*,
    288 N.C. 393, 218 S.E.2d 466 (1975) .............................24, 25, 27

*Napier v. Chesapeake & O. Ry. Co.*,
    582 F.2d 1344 (4th Cir. 1978) ...............................................34, 39

*New Hampshire v. Maine*,
    532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) .....................44, 45

*Northington v. Michelotti*,
    121 N.C. App. 180, 464 S.E.2d 711 (1995) ................................47

*Ozyagcilar v. Davis*,
    701 F.2d 306 (4th Cir. 1983) ......................................................38

*Page v. Bolger*,
    645 F.2d 227 (4th Cir. 1981), *cert. denied*,
    454 U.S. 892, 102 S. Ct. 388, 70 L. Ed. 206 (1981) ....................................19

*Parker v. Glosson*,
    182 N.C. App. 229, 641 S.E.2d 735 (2007) ...........................................26, 27

*Parker v. Knowlton Construction Co.*,
    158 W. Va. 314, 327, 210 S.E.2d 918 (1975) ..............................................24

*Pegram v. Herdrich*,
    530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000) ...........................44

*People for the Ethical Treatment of Animals v. Doughney*,
    263 F.3d 359 (4th Cir. 2001) ......................................................................19

*Peterson v. Morton F. Plant Hosp. Ass'n, Inc.*,
    656 So. 2d 501 (Fla. Dist. Ct. App. 1995), *rev. denied*,
    664 So. 2d 249 (Fla. 1995) ........................................................................40

*Petty v. Timken Corp.*,
    849 F.2d 130 (4th Cir. 1988) ................................................................38, 51

*Piver v. Pender County Bd. Of Educ.*,
    835 F.2d 1076 (4th Cir. 1987), *cert. denied*,
    487 U.S. 1206, 108 S. Ct. 2847, 101 L. Ed. 2d 885 (1988) .........................22

*Powell v. City of Newton*,
    364 N.C. 562, 703 S.E.2d 723 (2010), *reh'g denied*,
    706 S.E.2d 241 (2011) ...........................................................17, 44, 48, 49

*Purcell Int'l Textile Group, Inc. v. Algemene AFW N.V.*,
    185 N.C. App. 135, 647 S.E.2d 667 (2007), *rev. denied*,
    362 N.C. 88, 655 S.E.2d 840 (2007) ..........................................................21

*Ratchford v. C.C. Mangum, Inc.*,
    150 N.C. App. 197, 564 S.E.2d 245 (2002) .................................................50

*Ross v. Ross*,
    193 N.C. App. 247, 715 S.E.2d 859 (2011) .................................................52

*Sales v. Grant*,
158 F.3d 768 (4th Cir. 1998) .......................................................................20

*Simmons v. United Mortg. & Loan Inv., LLC*,
634 F.3d 754 (4th Cir. 2011) .......................................................................55

*Smith v. Young Moving & Storage, Inc.*,
167 N.C. App. 487, 606 S.E.2d 173 (2004) ...........................................31, 43

*Thomas M. McInnis & Associates, Inc. v. Hall*,
318 N.C. 421, 349 S.E.2d 552 (1986) ..........................................................49

*Townsend v. Stick*,
158 F.2d 142 (4th Cir. 1946) ..................................................................24, 33

*U.S. ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co., Inc.*,
34 F. Supp. 2d 397 (N.D. W. Va. 1999), *aff'd sub nom.*,
*United States v. Centex-Simpson Const.*,
203 F.3d 824 (4th Cir. 2000) .................................................30, 31, 33, 53

*United States v. Centex-Simpson Const.*,
203 F.3d 824 (4th Cir. 2000) .......................................................................31

*United States v. U.S. Gypsum Co.*,
333 U.S. 364, 68 S. Ct. 525, 92 L. Ed 746 (1948) .......................................19

*USA Cable v. World Wrestling Fed'n Entm't, Inc.*,
2000 WL 875682 (Del. Ch. June 27, 2000), *aff'd*,
766 A.2d 462 (Del. 2000) ............................................................................32

*Warren v. Halstead Indus., Inc.*,
802 F.2d 746 (4th Cir. 1986), *on reh'g*,
835 F.2d 535 (4th Cir. 1988) .......................................................................34

*Welcome Wagon, Inc. v. Morris*,
224 F.2d 693 (4th Cir. 1955) .......................................................................53

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999) .......................................................................19

*Wood v. Virginia Hauling Co.*,
    528 F.2d 423 (4th Cir. 1975) .......................................................39

*Workman v. Rutherford Elec. Membership Corp.*,
    170 N.C. App. 481, 613 S.E.2d 243 (2005) ................................52

*Young v. FDIC*,
    103 F.3d 1180 (4th Cir. 1997), *cert. denied*,
    522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255 (1997) .........16, 19

## STATUTES

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1332 ........................................................................1

## RULES

Fed. R. App. P. 3 ........................................................................1

Fed. R. App. P. 4 ........................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................54

Fed. R. Civ. P. 41 .................................................................15, 53

Fed. R. Civ. P. 41(b) .......................................................*passim*

Fed. R. Civ. P. 52(a) ................................................................19

Fed. R. Civ. P. 54(b) ...............................................................1, 4

## OTHER AUTHORITIES

*Black's Law Dictionary* (6th ed.1990) .................................. 52-53

*Stansbury*, *North Carolina Evidence*, § 257 ...........................42

## JURISDICTIONAL STATEMENT

This is an appeal from an Order entered by the United States District Court for the Western District of North Carolina on August 30, 2012. Plaintiff-Appellant Prospect Capital Corporation filed a Notice of Appeal on September 28, 2012. Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Defendant-Appellee Adkisson Sherbert Associates, P.A., timely filed notice of its cross appeal on October 9, 2012. On December 10, 2012, the District Court directed that the Order dated August 30, 2012, be entered as a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The District Court had jurisdiction of this action pursuant to 28 U.S.C. § 1332. The jurisdiction of the Court of Appeals is invoked under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES
## PROSPECT CAPITAL'S APPEAL

I.   WHETHER THE DISTRICT COURT CORRECTLY FOUND THAT THE PARTIES REACHED A COMPLETE SETTLEMENT AGREEMENT ON NOVEMBER 22, 2011.

II.  WHETHER THE DISTRICT COURT CORRECTLY CONSIDERED EVIDENCE OF SETTLEMENT COMMUNICATIONS THAT SHOW THE PARTIES REACHED A BINDING SETTLEMENT AGREEMENT ON NOVEMBER 22, 2011.

III. WHETHER THE DISTRICT COURT CORRECTLY DETERMINED THAT PLAINTIFF IS JUDICIALLY ESTOPPED FROM DENYING THE EXISTENCE OF THE SETTLEMENT AGREEMENT WHEN PLAINTIFF PREVIOUSLY REPRESENTED TO THE DISTRICT COURT THAT THE PARTIES HAD REACHED AGREEMENT ON THE MATERIAL TERMS OF A SETTLEMENT.

1

IV.    WHETHER THE DISTRICT COURT CORRECTLY CONCLUDED
       THAT THE MOTION TO ENFORCE SETTLEMENT AGREEMENT
       WAS NOT BARRED BY THE DOCTRINE OF COLLATERAL
       ESTOPPEL

**STATEMENT OF THE ISSUES**
**ADKISSON SHERBERT ASSOCIATES, P.A.'S CROSS-APPEAL**

V.     WHETHER THE DISTRICT COURT ERRED WHEN IT DENIED
       ADKISSON SHERBERT'S REQUEST THAT PROSPECT CAPITAL'S
       ACTION BE DISMISSED PURSUANT TO F. R. CIV. P. 41(B) IN
       CONSEQUENCE OF THE SETTLEMENT AGREEMENT REACHED ON
       NOVEMBER 22, 2011.

VI.    IF THIS COURT SHOULD REVERSE THE DISTRICT COURT,
       WHETHER THE DISTRICT COURT SHOULD DECIDE ADKISSON
       SHERBERT'S MOTION TO DISMISS SECOND AMENDED
       COMPLAINT ON THE MERITS.

**STATEMENT OF THE CASE**

Plaintiff alleges that Adkisson Sherbert negligently provided financial

information about ESA Environmental Specialists, Inc., a non-party to whom

Plaintiff loaned money.  (J.A. 163-67).  On January 28, 2009, Plaintiff filed a

Complaint against Adkisson Sherbert and fifteen other defendants in the U.S.

District Court for the Southern District of New York.  (J.A. 35).  By order dated

December 21, 2009, the matter was transferred to the U.S. District Court for the

Western District of North Carolina.  (J.A. 110-121).

By order dated September 2, 2011, the District Court held that Plaintiff had

failed to meet the federal pleading standard in regards to all claims asserted against

Adkisson Sherbert.  (J.A. 131-36).  However, the District Court denied Adkisson

2

Sherbert's motion to dismiss, without prejudice (J.A. 134, 135), ordered Plaintiff to file a Second Amended Complaint addressing the pleading deficiencies (Id.), and encouraged the parties to seek an amicable resolution. (J.A. 136). Plaintiff filed its Second Amended Complaint on October 14, 2011. (J.A. 140). Adkisson Sherbert filed its Renewed Motion to Dismiss Second Amended Complaint (the "Motion to Dismiss") on November 11, 2011. (J.A. 284).

By unopposed motion filed on November 22, 2011, Plaintiff sought and received additional time to respond to the Motion to Dismiss on the grounds that the parties had reached agreement on the material terms of a settlement. (J.A. 287). By unopposed motion filed on December 29, 2011, Plaintiff sought and received additional time to respond to the Motion to Dismiss on the grounds that the parties had reached agreement on the material terms of a settlement and Plaintiff's authorized representative would not be available to sign a written settlement agreement until after the holidays. (J.A. 290).

By motion filed on February 9, 2009, Adkisson Sherbert sought permission to file under seal a Motion to Enforce Settlement Agreement and supporting materials that show the parties reached a complete settlement agreement on November 22, 2011. (J.A. 303). That motion was granted by order dated March 26, 2012. (J.A. 311). Adkisson Sherbert filed its Motion to Enforce Settlement Agreement and supporting materials under seal on March 30, 2012. (J.A. 358).

3

The District Court conducted an evidentiary hearing in regards to the Motion to Enforce Settlement Agreement on August 15, 2012. (J.A. 398).

By order dated August 30, 2012, the District Court granted the Motion to Enforce Settlement Agreement. (J.A. 661). The District Court found that the parties entered into a complete settlement agreement, whose terms and conditions can be determined, when their respective attorneys, each vested with settlement authority, spoke on November 22, 2011. (J.A. 658). The District Court further concluded that Plaintiff was judicially estopped from denying the existence of the settlement agreement because Plaintiff previously represented that the parties had reached a settlement agreement when seeking additional time to respond to the pending Motion to Dismiss. (J.A. 660). The District Court denied Adkisson Sherbert's request that Plaintiff's claims against Adkisson Sherbert be involuntarily dismissed pursuant to Rule 41(b). (J.A. 661). The District Court instead ordered that the parties enter a Notice of Settlement within thirty (30) days. (Id.). Finally, the District Court denied the Motion to Dismiss as moot.

On December 10, 2012, the District Court directed that the Order dated August 30, 2012, be entered as a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. (J.A. 353F-G).

4

## STATEMENT OF FACTS

Plaintiff is a mezzanine debt and private equity company that loaned more than $12 million to a non-party, ESA Environmental Specialists, Inc. ("ESA"). (J.A. 652).  Plaintiff alleged that ESA's officers and directors conspired with others to divert loan proceeds to their own use through a Ponzi scheme.  (J.A. 124).  ESA did not repay the loan, sought the protection of the U.S. Bankruptcy Court for the Western District of North Carolina, and Plaintiff purchased ESA's assets in bankruptcy.  (Id.).

Adkisson Sherbert Associates, P.A. ("Adkisson Sherbert") provided professional accounting services to ESA.  (J.A. 422).  Plaintiff did not allege that Adkisson Sherbert was complicit in the Ponzi scheme or played any role in the alleged civil conspiracy.  Plaintiff never alleged that the Ponzi scheme or other fraud was ongoing at the time of the audit, more than a year before the loan. Rather, Plaintiff alleged that Adkisson Sherbert negligently provided inaccurate financial information about ESA.  (J.A. 163-167).

In an order dated September 2, 2011, the District Court found that Plaintiff had failed to satisfy the federal pleading standard in regards to all claims asserted against Adkisson Sherbert.  (J.A. 131-136).  The District Court ordered Plaintiff to file a Second Amended Complaint addressing the pleading deficiencies (J.A. 134, 135), and urged the parties to "discuss an amicable resolution."  (J.A. 136).

5

On September 12, 2011, Plaintiff's attorney, H. Marc Tepper, asked Adkisson Sherbert's attorney, Rick Sharpless, to consent to a motion for extension of the time in which Plaintiff was to file its Second Amended Complaint.  (J.A. 612).  In the email, Mr. Tepper said:  "In this manner, we can utilize this time to place all our efforts towards reaching a settlement rather than the ongoing expense of litigation."  (Id.).

On October 10, 2011, Mr. Tepper, Mr. Sharpless, and attorneys representing other parties discussed the possibility of a settlement.  (J.A. 608).  At the conclusion of the call, the attorneys agreed to confer with their clients to determine whether settlement was feasible.  (Id.).

Plaintiff filed its Second Amended Complaint on October 14, 2011.  (J.A. 140).  On October 26, 2011, Mr. Sharpless asked Mr. Tepper to agree to a two-week extension of time for Adkisson Sherbert to plead in response to the Second Amended Complaint.  (J.A. 613).  By reply email, Mr. Tepper said, "yes, but it is contingent on our furthering our settlement discussions."  (Id.).  Adkisson Sherbert timely filed its Renewed Motion to Dismiss Second Amended Complaint (the "Motion to Dismiss") on November 11, 2011.  (J.A. 284).

Mr. Tepper sent Mr. Sharpless and other defense attorneys an e-mail dated November 1, 2011.  It states:

> Where does everyone stand on the issue of settlement?  It has been two weeks since I was informed you all would

6

> be getting back to us to advise whether a settlement was
> feasible before engaging in motion practice and/or
> discovery.

(J.A. 595).

In an email to Mr. Tepper dated November 1, 2011, Mr. Sharpless said that

Adkisson Sherbert and Cherry Bekaert & Holland ("CBH"), another CPA firm

named as a defendant in this action, each was willing to pay Plaintiff [            ]

> for a full settlement and release of all claims from your
> client, and dismissal of all pending litigation.  This offer
> needs to be accepted within a week.  The settlement
> should be confidential.

(J.A. 546.).  Mr. Tepper replied on November 4, 2011.  "Prospect Capital will

accept [        ] from each client, on a confidential basis to the extent possible."

(J.A. 545).

On November 11, 2011, Mr. Sharpless replied that the two CPA firms each

would pay [            ]

> in full settlement of all claims against Cherry Bekaert and
> Holland and Adkisson Sherbert Associates (and their
> members, partners and employees).  We would expect a
> customary confidentiality provision.  The pending
> lawsuits would be dismissed with prejudice (or the
> claims against our clients would be dismissed with
> prejudice).

(J.A. 602).

In an e-mail to Mr. Tepper on November 14, 2011, Mr. Sharpless said he

and the attorney representing CBH each had spoken with their clients "and [

7

] is it – that's the best we can do." (J.A. 605). The email further stated: "**Same other terms as before**. Tell your client it's the best deal out there and more than we contemplated paying." (Id.) (emphasis added).

In an e-mail to Mr. Tepper on Wednesday, November 16, 2011, Mr. Sharpless asked whether Mr. Tepper and Plaintiff had reviewed Adkisson Sherbert's settlement offer contained in the e-mail of Monday, November 14, 2011. (J.A. 606). "You had said your client was interested in moving quickly, have you had a chance to review our offer from Monday with them?" (Id.).

Mr. Sharpless and Mr. Tepper spoke on November 22, 2011. (J.A. 608). Mr. Sharpless said the parties agreed to settle this matter on the following terms:

> a.   Adkisson Sherbert would pay [         ] to Plaintiff;
> b.   Plaintiff would take a dismissal with prejudice of all claims against Adkisson Sherbert in this action;
> c.   Plaintiff would release Adkisson Sherbert from any and all claims that Plaintiff might have against Adkisson Sherbert;
> d.   The terms of the settlement would be confidential;
> e.   The parties would bear their own costs.

(J.A. 608).

Plaintiff's general counsel, Joseph Ferraro, testified that he knew Mr. Sharpless and Mr. Tepper were discussing settling the case for [         ] on November 22, 2011. (J.A. 512). Plaintiff does not dispute that Mr. Tepper had the authority to bind Plaintiff to a settlement agreement during that phone

8

conversation.  (J.A. 465).  Mr. Tepper acknowledged that he told Mr. Sharpless during the phone conversation that "we were good to go for the amount that had been proposed by Adkisson, Sherbert."  (J.A. 451).

There is no evidence that either party conditioned its assent in any manner on November 22, 2011.  Specifically, Mr. Tepper did not tell Mr. Sharpless that the agreement was subject to the approval of Plaintiff's CEO.  (J.A. 458.).

The parties envisioned that they would enter into a written agreement subsequent to November 22, 2011.  (J.A. 425).  But because there remained no material terms to negotiate, the purpose of this written agreement was to memorialize the terms of the binding oral agreement reached on November 22, 2011.  See *Testimony of Rick Sharpless*, *J.A. 425*:

| | |
|---|---|
| Counsel for Plaintiff: | It was your expectation that terms might be negotiated in the context of coming to that agreement, correct? |
| Mr. Sharpless: | Not material terms, no.  It was my – it was my expectation that a written agreement would be prepared that would document exactly what was in the e-mail of November 11th and agreed to in the conversation of November 22nd. |

Plaintiff reported the settlement agreement to the court on the same day that Mr. Sharpless and Mr. Tepper spoke.  (J.A. 642).  In a filing dated November 22, 2011, Plaintiff cited the parties' agreement to the material terms of a settlement as

9

grounds for the court to grant Plaintiff an extension of time in which to respond to

the Motion to Dismiss. (Id.). Although Mr. Tepper would later testify that he did

not recall discussing any term other than the settlement amount (J.A. 451-52), the

court filing that bears his signature states that the parties had agreed to the

"**principal terms of a settlement agreement**, but require additional time to

complete the drafting and execution of the settlement agreement." (J.A. 642)

(emphasis added). The Court granted Plaintiff's motion for an extension of time.

(J.A. 645).

Mr. Sharpless confirmed the terms of the agreement in an email sent to Mr.

Tepper on November 29, 2011. (J.A. 614). The email states:

> We have agreed to settle your clients (Prospect Capital's)
> claims against ASA, and against CBH (separately) for
> [            ] from each of ASA and CBH, paid to
> Prospect or as they direct. The settlement document is to
> contain a confidentiality clause, a full release of all
> claims, and the lawsuits will be dismissed with prejudice,
> each party to bear their own costs.

(Id.).

On December 1, 2011, Mr. Tepper e-mailed a draft Confidential Settlement

Agreement to Mr. Sharpless. (J.A. 548). The document reflects the terms

contained in Mr. Sharpless' email of November 29, 2011, (J.A. 549-51), as well as

additional terms. (J.A. 549-53). Adkisson Sherbert proposed few revisions to

these additional terms. (J.A. 655). On December 15, 2011, Mr. Tepper e-mailed a

10

copy of a Confidential Settlement Agreement to Mr. Sharpless with a request to "Please sign and return." (J.A. 615).

By email dated December 19, 2011, Mr. Sharpless asked Mr. Tepper to provide the Tax Identification Number of Mr. Tepper's firm. (J.A. 623). Mr. Sharpless told Mr. Tepper that this was "needed before the check can be issued." (Id.). On December 19, 2011, Mr. Tepper emailed the Tax Identification Number of Plaintiff to Mr. Sharpless. (J.A. 624). Two days later, Mr. Sharpless e-mailed an executed copy of the written agreement to Mr. Tepper. (J.A. 625-32). Mr. Sharpless then mailed the settlement check to Mr. Tepper on December 28, 2011. (J.A. 633-34).

On December 29, 2011, Plaintiff filed a second motion for extension of time in which to respond to the Motion to Dismiss. (J.A. 290). It states:

> 2.  Prospect and ASA (collectively the 'Settling Parties') have agreed to the principal terms of a settlement agreement, but require additional time to complete the drafting and execution of the settlement agreement.
> …
> 5.  The Settling Parties have concluded their settlement negotiations and now need to fully execute the Settlement Agreement.
> 6.  Due to the holidays, no individual with authority to sign on behalf of Prospect will be available to execute the Settlement Agreement prior to the January 3, 2012, deadline to respond to ASA's Renewed Motion to Dismiss.
> 7.  Accordingly and for the forgoing reasons, Prospect respectfully requests a ten-day extension of the

11

January 3, 2012 deadline **for Prospect to execute the Settlement Agreement and discontinue this action**.

(J.A. 290-91) (emphasis added).  At the evidentiary hearing, Mr. Tepper acknowledged that this motion for extension of time gave no indication that the settlement agreement was in any respect incomplete or uncertain.  (J.A. 481).

| Mr. Sharpless: | Why not? |
| Mr. Tepper: | Because I wasn't – I was not aware of that. |

(Id.).  The Court granted the motion for extension of time.  (J.A. 294A-B).

Plaintiff's general counsel, Mr. Ferraro, said Plaintiff never agrees to settle any litigation without approval from its CEO, John Barry.  (J.A. 494).  Plaintiff has a policy that "all documentation needs to go up the chain, finally landing on the chief executive officer's desk for final approval."  (J.A. 493.).

But before January 17, 2012, Plaintiff never told Mr. Sharpless or the District Court that the settlement agreement reached on November 22, 2011, was subject to approval by Mr. Barry.  (J.A. 458).  Mr. Barry did not testify at the evidentiary hearing.  Plaintiff never has explained why or when Mr. Barry rejected the settlement agreement of November 22, 2011.

On January 17, 2012, Mr. Tepper returned the settlement check to Mr. Sharpless with a letter stating that Plaintiff would not sign the settlement agreement.  (J.A. 641).  Plaintiff has specified no objection to the form of the

12

written settlement agreement.  Mr. Tepper was unable to specify any term, other than price, that Plaintiff found objectionable.

| | |
|---|---|
| Mr. Sharpless: | Do you have any understanding of what problem there is with the settlement in this case other – for Prospect other than the amount? |
| Mr. Tepper: | Prospect, as it can do and as is clearly contained in the agreement, has decided not to proceed with the settlement. |

(J.A. 463).

Adkisson Sherbert filed a Motion to Enforce Settlement Agreement and supporting materials on March 30, 2012.  (J.A. 358).  At a hearing on June 20, 2012, Plaintiff's attorney Carl Huth told the District Court that Plaintiff's senior management was not willing to settle the case for [        ].  (J.A. 339).

| | |
|---|---|
| The Court: | All right.  What's the problem?  Y'all talked – have talked money.  What's the problem? |
| Mr. Huth: | The problem is senior management thinks this case is worth a lot more than this proposal would have been worth. |

(J.A. 339).

At the August 15, 2012, evidentiary hearing, Mr. Sharpless testified that the parties reached a complete settlement agreement when he and Mr. Tepper spoke on November 22, 2011.  (J.A. 411).  The terms of the agreement were those set forth in the email he sent Mr. Tepper confirming the agreement.  (J.A. 411, 614).  Mr.

13

Tepper said he did not recall discussing any term other than price on November 22, 2011.  (J.A. 451-52).

Counsel for Plaintiff told the District Court that Plaintiff does not dispute that Mr. Tepper had settlement authority.  (J.A. 465).  Counsel for Plaintiff agreed with the District Court's observation that the dispositive issue therefore was whether the District Court believed Mr. Sharpless or Mr. Tepper regarding the conversation of November 22, 2011.  (J.A. 466).

The District Court issued a written Order on August 30, 2012.  (J.A. 651).  The Order states that the parties reached agreement on the material terms of a settlement during the phone call between Mr. Sharpless and Mr. Tepper on November 22, 2011.  (J.A. 658).  The terms and conditions of the agreement can be determined, because they are set forth in the e-mail message that Mr. Sharpless sent Mr. Tepper confirming the agreement and in the written settlement agreement that Mr. Tepper drafted.  (J.A. 654).  The District Court further concluded that Plaintiff was judicially estopped from denying that the parties agreed to the material terms of a settlement where Plaintiff previously represented to the Court that the parties had reached agreement on the material terms of a settlement in order to obtain multiple extensions of time in which to respond to the Motion to Dismiss.  (J.A. 659-60).  Finally, the District Court denied Adkisson Sherbert's request that Plaintiff's claims against Adkisson Sherbert be dismissed pursuant to

14

F. R. Civ. P. 41 (J.A. 661), and denied as moot Adkisson Sherbert's Motion to

Dismiss Second Amended Complaint.  (J.A. 662).

## SUMMARY OF THE ARGUMENT

Ample evidence supports the District Court's determination that, under the

North Carolina law of contracts, Plaintiff and Adkisson Sherbert reached a

complete settlement agreement, whose terms and conditions can be identified,

when their respective attorneys spoke on November 22, 2011.

Counsel for Adkisson Sherbert testified, and the District Court found, that

during the phone conference the attorneys agreed to resolve this matter on the

terms that are set forth in the e-mail message that Mr. Sharpless sent Mr. Tepper

confirming the agreement and in the written settlement agreement that Mr. Tepper

drafted.

These terms fully resolved all matters in dispute between Plaintiff and

Adkisson Sherbert.  No material terms were left open for negotiation.  Neither

party conditioned its assent in any manner.  Specifically, Plaintiff did not say that

the agreement would not take effect until the parties executed a mutually agreeable

written agreement.  Nor did Plaintiff say that the settlement terms were subject to

the approval of Plaintiff's senior management.  Instead, the parties' authorized

agents unequivocally and unconditionally gave their mutual assent to a complete

settlement agreement.  A valid and binding contract came into existence at that

15

time, and neither party remained free to disavow that contract upon having second thoughts about the deal. While a subsequent writing, never executed by both parties, proposed additional terms (including the merger and integration clauses and the execution clause beloved by Prospect) the November 22 agreement remained in effect, and was the agreement ultimately enforced by the District Court. Plaintiff later sought to disavow this binding oral agreement, for no reason other than its senior management's objection to the settlement amount, and the District Court correctly granted the Motion to Enforce Settlement Agreement brought by Adkisson Sherbert. See *Hensley v. Alcon Laboratories*, 277 F.3d 535, 540 (4th Cir. 2002).

> '[H]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement,' *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997), and the fact that the agreement is not in writing does not render it unenforceable. *Alexander v. Industries of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990).

The District Court correctly concluded that Plaintiff should be judicially estopped from denying the existence of a settlement agreement. In obtaining extensions of time in which to respond to Adkisson Sherbert's Motion to Dismiss, Plaintiff repeatedly told the court that the parties had reached agreement on the material terms of a settlement. Plaintiff now seeks to deny that the parties ever reached agreement on the material terms of a settlement. The District Court

16

correctly held that Plaintiff is judicially estopped from asserting this clearly inconsistent position, where Plaintiff otherwise would secure an unfair advantage in this litigation.  See *Powell v. City of Newton*, 364 N.C. 562, 569, 703 S.E.2d 723, 729 (2010), *reh'g denied*, 706 S.E.2d 241 (2011) (holding on facts similar to those presented here that plaintiff was judicially estopped to deny the existence of a settlement agreement where he affirmed to the court that the parties had agreed to the settlement, the defendant paid over the settlement funds to the plaintiff's attorney, and plaintiff thereafter refused to sign the written settlement agreement).

Before the District Court, and in the Brief of Appellant, Plaintiff failed to directly confront the specific issue presented by the Motion to Enforce Settlement Agreement: did the parties reach a complete settlement agreement, whose terms and conditions can be determined, on November 22, 2011?  Instead, Plaintiff seeks to use the additional terms of a writing that it never signed to show that the parties never agreed to the writing.  Adkisson Sherbert always has contended that a valid and binding oral agreement came into existence on November 22, 2011, and it was this oral agreement that Adkisson Sherbert sought to enforce through its Motion to Enforce Settlement Agreement.  In seeking to avoid that binding oral contract, Plaintiff relies upon circular and self-contradictory arguments and on case law that has no application to the facts of this case.

17

Plaintiff's claim that the District Court erred by considering evidence of settlement communications is contrary to this court's precedent that required the District Court to conduct an evidentiary hearing to determine whether the parties reached a complete settlement agreement whose terms and conditions can be determined on November 22, 2011. The unfortunate tone that Plaintiff in its appellate brief exhibits toward the District Court for adhering to this binding precedent underscores Plaintiff's enduring refusal to directly confront the specific issue presented by the Motion to Enforce Settlement Agreement:  did the parties reach a complete settlement agreement whose terms and conditions can be determined on November 22, 2011?

Regarding the cross-appeal of Adkisson Sherbert, the District Court erred when it denied Adkisson Sherbert's request that this action be dismissed pursuant to F. R. Civ. P. 41(b) in consequence of the parties' settlement agreement of November 22, 2011. Having prevailed on the motion to enforce settlement agreement, Adkisson Sherbert was entitled to specific performance of the contract reached on November 22, 2011, including a dismissal with prejudice of the claims that Plaintiff asserts against Adkisson Sherbert in this action.

Finally, if this court should reverse the District Court and remand this action to the District Court, then this court should order the District Court to decide the Motion to Dismiss on its merits.

18

## STANDARD OF REVIEW

The Fourth Circuit reviews a district court's findings of fact for clear error, and its decision whether to enforce a settlement agreement for abuse of discretion. *Hensley v. Alcon Labs.*, 277 F.3d 535, 541 (4th Cir. 2002), citing *Young v. FDIC*, 103 F.3d 1180, 1194 (4th Cir. 1997), *cert. denied*, 522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255 (1997). A trial court abuses its discretion only if its conclusions are based on mistaken legal principles or clearly erroneous factual findings. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001), citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Minyard Enterprises*, *Inc. v. Southeastern Chemical & Solvent Co.*, 184 F.3d 373, 380 (4th Cir. 1999), citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed 746 (1948). Where a finding rests upon assessments of credibility and the resolution of conflicting permissible inferences, the reviewing court must accord "great deference" to the trial judge's superior vantage point. *Page v. Bolger*, 645 F.2d 227, 231 (4th Cir. 1981), *cert. denied*, 454 U.S. 892, 102 S. Ct. 388, 70 L. Ed. 206 (1981), citing F. R. Civ. P. 52(a). This court reviews a district court's decision to apply judicial estoppel for abuse of discretion. *Jaffe v. Accredited Sur. & Cas. Co.*,

19

*Inc.*, 294 F.3d 584, 595 n.7 (4th Cir. 2002).  A district court's decision regarding the applicability of collateral estoppel is reviewed for abuse of discretion.  *Sales v. Grant*, 158 F.3d 768, 781 (4th Cir. 1998).  A district court's decision whether to dismiss an action pursuant to F. R. Civ. P. 41(b) is reviewed for abuse of discretion.  *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978).

### ARGUMENT

To exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.  *Hensley v. Alcon Laboratories*, *Inc*., 277 F.3d 535, 540-41 (4th Cir. 2002), citing *Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir. 1991).

## I.    THE DISTRICT COURT CORRECTLY FOUND THAT THE PARTIES REACHED A COMPLETE SETTLEMENT AGREEMENT ON NOVEMBER 22, 2011.

The District Court found that the parties reached agreement on the material terms of a settlement whose terms and conditions can be determined when their respective attorneys spoke on November 22, 2011.  This finding was correct for the following reasons:  (A)  The objectively manifested intentions of the parties show that they reached a complete settlement agreement;  (B)  The finding is entitled to great deference to the extent that it rests upon the District Court's assessment of

20

witness credibility and resolution of conflicting permissible inferences, and;  (C)

The terms and conditions of the settlement agreement can readily be determined.

### A. The objectively manifested intentions of the parties show that the parties reached a complete settlement agreement on November 22, 2011.

A compromise and settlement agreement terminating or purporting to

terminate a controversy is a contract, to be interpreted and tested by established

rules relating to contracts. *Harris v. Ray Johnson Const. Co.*, *Inc.*, 139 N.C. App.

827, 829, 534 S.E.2d 653, 654 (2000), citing *Casualty Co. v. Teer Co.*, 250 N.C.

547, 550, 109 S.E.2d 171, 173 (1959).  A valid contract exists where there has

been a meeting of the minds as to all essential terms of the agreement.  *Harris*, 139

N.C. App. at 830-31, 534 S.E.2d at 655.  A settlement agreement need not be in

writing to be enforceable.  *Hensley v. Alcon Laboratories*, 277 F.3d 535, 540 (4th

Cir. 2002), citing *Alexander v. Industries of the Blind*, *Inc.*, 901 F.2d 40, 41 (4th

Cir. 1990); see also, *Purcell Int'l Textile Group*, *Inc. v. Algemene AFW N.V.*, 185

N.C. App. 135, 141, 647 S.E.2d 667, 672 (2007), *rev. denied*, 362 N.C. 88, 655

S.E.2d 840 (2007) (oral settlement agreement held valid and binding on defendants

because defendants' attorney finalized the settlement negotiation via telephone

with plaintiff, and agreement was not required to be reduced to writing.).

In determining whether the parties reached a complete settlement agreement

on November 22, 2011, the District Court properly looked to the objectively

21

manifested intentions of the parties.  See *Moore v. Beaufort County, N.C.*, 936 F.2d 159, 162 (4th Cir. 1991), citing *Piver v. Pender County Bd. Of Educ.*, 835 F.2d 1076, 1083 (4th Cir. 1987), *cert. denied*, 487 U.S. 1206, 108 S. Ct. 2847, 101 L. Ed. 2d 885 (1988) ("In deciding whether a settlement agreement has been reached, the Court looks to the objectively manifested intentions of the parties.").  Those actions, occurring before there arose a factual dispute regarding the existence of a settlement agreement, strongly indicate that the parties intended to settle this litigation in the agreement of November 22, 2011.

Before November 22, 2011, the parties exchanged written offers and counter-offers, signaling their intention to reach a settlement agreement.  (J.A. 545, 546, 602, 605).  Each party vested its attorney with settlement authority.  (J.A. 465, J.A. 410).  Mr. Sharpless testified that the attorneys agreed on the material terms of a settlement on November 22, 2011.  (J.A. 411).  Mr. Tepper testified that the parties agreed to the settlement amount.  (J.A. 451).  Later that same day, Plaintiff reported to the Court that the parties had reached agreement on the material terms of a settlement.  (J.A. 642).  Mr. Sharpless sent Mr. Tepper an e-mail confirming that the parties had reached an agreement and outlining the material terms.  (J.A. 614).  Mr. Tepper incorporated those terms into a draft settlement agreement and proposed additional terms.  (J.A. 654-55).  Plaintiff accepted several revisions that Adkisson Sherbert proposed to the additional terms.  (J.A. 577).  At Plaintiff's

request (J.A. 615), Adkisson Sherbert then signed and returned the written settlement agreement (J.A. 625-32), and asked Mr. Tepper to provide his firm's Tax Identification Number so that the settlement check could issue. (J.A. 623). Adkisson Sherbert tendered the settlement funds to Plaintiff. (J.A. 633-34). Plaintiff accepted the settlement check without objection and without question. (J.A. 321). Plaintiff again represented to the District Court that the parties had reached a settlement agreement, and said Plaintiff's authorized signatory would sign a written agreement after the holidays. (J.A. 290-91). By all these actions, the parties evidenced their intent to be bound by the complete settlement agreement reached on November 22, 2011.

As its only evidence that the parties did not intend to be bound by the agreement reached on November 22, 2011, Plaintiff cites the provisions of the written Confidential Settlement Agreement that Mr. Tepper sent to Mr. Sharpless on December 1, 2011, and to which each party proposed revisions. Plaintiff claims that these terms introduced a new, significant limitation: That the agreement already made would now be subject to management's review, and only upon their signature would it become effective. Plaintiff misapprehends the nature of the inquiry that the District Court was required to make. To determine whether the parties reached agreement on the material terms of a settlement on November 22, 2011, the District Court properly looked to the objectively manifested intentions of

23

the parties.  Whether Plaintiff subjectively believed that the agreement reached on

November 22, 2011, was not binding unless executed in a formal written

instrument is immaterial, absent some evidence that Plaintiff manifested this belief

at the time of contracting.  See *Charbonnages de France v. Smith*, 597 F.2d 406,

417 (4th Cir. 1979), citing *Townsend v. Stick*, 158 F.2d 142, 145 (4th Cir. 1946);

*Parker v. Knowlton Construction Co.*, 158 W. Va. 314, 327, 210 S.E.2d 918, 926

(W.Va. 1975):

> An intention to reduce an agreement to writing does not
> compel the conclusion that this is a condition to the
> formation of contract.  This too depends on the parties'
> manifested intentions.

See also, *N.C. Nat'l. Bank v. Wallens*, 26 N.C. App. 580, 583-84, 217 S.E.2d 12,

15 (1975), *cert. denied*, 288 N.C. 393, 218 S.E.2d 466 (1975):

> Clearly, if the parties in the present case had manifested
> an intent not to become bound until the execution of a
> more formal agreement or document, then such an intent
> would be given effect.  However, they stated that the
> writing would serve as an agreement until 'proper
> complete documents' could be drawn.  From such
> language it cannot be said that execution of a later
> agreement was a condition precedent to any contractual
> rights which might otherwise pertain.

Likewise, whether Plaintiff subjectively believed that the agreement was subject to

the approval of its senior management is immaterial, absent evidence that Plaintiff

manifested this belief on November 22, 2011.  See *Moore v. Beaufort County*,

*N.C.*, 936 F.2d 159, 164 (4th Cir. 1991) ("After extending an unconditional

24

settlement offer, the Board may not avoid the agreement by claiming a subjective belief that no agreement would be final before their formal approval.").  In assenting to the material terms of a settlement on November 22, 2011, Plaintiff did not manifest an intention that it would not be bound until its senior management approved the terms and the parties executed a written agreement.  Therefore, client approval and a written settlement agreement were not conditions precedent to the formation of a binding contract.  See *Kornegay v. Aspen Asset Group*, *LLC*, 204 N.C. App. 213, 224, 693 S.E.2d 723, 732 (2010), citing *N.C. Nat'l Bank v. Wallens*, 26 N.C. App. 580, 583-84, 217 S.E.2d 12, 15 (1975), *cert. denied*, 288 N.C. 393, 218 S.E.2d 466 (1975) ("even if contracting parties expressly contemplate later written document, oral agreement becomes effective absent explicit statement by one of parties conditioning effectiveness on consummation of writing.").  A valid and binding settlement came into existence on November 22, 2011, and Plaintiff's subsequent drafting of a written agreement with additional terms will not prevent the enforcement of that binding oral agreement.  See *Laing v. Lewis*, 142 N.C. App. 336, 337-38, 542 S.E.2d 301, 302-03 (2001) (terms of oral agreement to settle landlord's action against tenant for nonpayment of rent became binding upon the parties once the settlement agreement was reached, and thus, trial court was required to enforce the terms of that agreement without altering such terms in any way.).

25

Plaintiff's reliance upon case law that holds contracting parties can expressly provide that their agreement will not become effective until they execute a written document is misplaced.  Adkisson Sherbert and Plaintiff did not condition their agreement when they gave their mutual assent to the material terms of a settlement on November 22, 2011.  For instance, Plaintiff cites *Parker v. Glosson*, 182 N.C. App. 229, 234, 641 S.E.2d 735, 739 (2007).  *Brief of Appellant*, p. 21.  *Parker* is distinguishable from this case because in *Parker* the parties expressly agreed that their agreement would not take effect until a written contract was fully executed. This express condition precedent was not fulfilled, and so no legally enforceable agreement ever came into being.  Unlike in *Parker*, the parties in this case did not condition their assent on the execution of a written agreement, and so a binding oral agreement came into effect on November 22, 2011.  Similarly, Plaintiff cites a case in which the North Carolina Court of Appeals held that a contract signed by a husband, but not by his wife, bound neither because the husband expressly conditioned his assent on the subsequent approval of the contract by his wife. *Brief of Appellant*, p. 22, citing *Hilliard v. Thompson*, 81 N.C. App. 404, 408, 344

26

S.E.2d 589, 591 (1986).[1]  Because the wife never signed the document, an express

condition precedent was not satisfied and no contract ever came into being:

> The uncontroverted forecast of evidence here establishes
> that defendant manifested an intent that the alleged
> agreement was not to be binding unless his wife became
> a party by agreeing to it, and that his wife refused to sign
> and become a party.  The alleged agreement remained
> inchoate and incomplete and never took effect as a
> binding contract.

*Hilliard*, 81 N.C. App. at 409, 344 S.E.2d at 592.  In contrast to *Hilliard*, Plaintiff

did not condition its assent to the material terms of a settlement on any future

event, including client approval or the execution of a written document, and so a

binding oral contract took effect on November 22, 2011.  See *Kornegay v. Aspen

Asset Group, LLC*, 204 N.C. App. 213, 224, 693 S.E.2d 723, 732 (2010), citing

*N.C. Nat'l Bank v. Wallens*, 26 N.C. App. 580, 583-84, 217 S.E.2d 12, 15 (1975),

*cert. denied*, 288 N.C. 393, 218 S.E.2d 466 (1975).

Plaintiff cites a Virginia Supreme Court decision for the proposition that:

> [W]here you have a proposal or agreement made in
> writing expressed to be subject to a formal contract being
> prepared, it means what it says; it is subject to and
> dependent upon a formal contract being prepared.

---

[1] Citation is to the concurring opinion of Judge Whichard, in which Judge Johnson
joined.  As noted in *Parker v. Glosson*, 182 N.C. App. 229, 233, 641 S.E.2d 735,
738 (2007), because Judge Johnson joined in the opinion of Judge Whichard, that
opinion actually contains the majority holding.

*Brief of Appellant*, p. 22, citing *Golding v. Floyd*, 261 Va. 190, 193, 539 S.E.2d 735, 737 (2001). Yet in *Golding*, the court distinguished between cases in which parties expressly agree that a contract is subject to formal execution of a written document, and those in which the parties objectively manifest their intention to be bound by an oral or written agreement, even though a subsequent formal agreement is contemplated. *Golding*, 261 Va. at 194, 539 S.E.2d at 737. In *Golding*, the parties expressly agreed that the agreement was dependent upon the execution of a formal written contract, and the failure to do so prevented a binding contract from ever coming into being. *Golding*, 261 Va. at 194, 539 S.E.2d at 737-38. Unlike in *Golding*, the parties in this case did not expressly agree that their agreement was dependent upon the execution of a formal written document, and so a binding oral contract was created on November 22, 2011. See *Golding*, 261 Va. at 194, 539 S.E.2d at 737. Plaintiff's reliance on cases that provide the parties may expressly condition their assent on the future execution of a mutually agreeable written settlement agreement is misplaced because the parties did not condition their assent on the execution of a future writing when they entered into a legally binding oral agreement on November 22, 2011.

Plaintiff's argument that the District Court failed to give effect to all provisions of the written settlement agreement is also without merit because neither party ever has contended that the written settlement agreement is the

28

enforceable contract governing the rights and obligations of the parties.  Plaintiff never signed the writing, and if it had, the parties would not be before this court. Instead, Adkisson Sherbert seeks to enforce the binding oral agreement of November 22, 2011.  In resolving Adkisson Sherbert's motion to enforce that oral agreement, the District Court correctly looked to the objectively manifested intentions of the parties, and not to the provisions of a written settlement agreement whose effectiveness both parties deny.

Plaintiff mischaracterizes the District Court's findings in order to cast them as self-contradictory.  Plaintiff argues that the District Court's findings are self-contradictory; if the terms of the oral agreement are set forth in the written settlement agreement, the oral agreement cannot be enforced, because the written settlement agreement contains a delivery and execution requirement and a merger/integration clause. *Brief of Appellant*, pp. 24-25.  But the District Court did not find that all of the terms and conditions in the written settlement agreement were part of the binding oral agreement.  To the contrary, the District Court noted that in addition to the material terms to which the parties agreed on November 22, 2011, the written agreement contained other additional terms, all of which the District Court deemed immaterial, including those on which Plaintiff seeks to rely. (J.A. 654-55, 658).  The District Court's findings that the parties reached a

complete settlement agreement, whose terms were later incorporated into the written settlement agreement, are not self-contradictory.

The District Court correctly rejected Plaintiff's arguments that choice of law, venue and the "scope of a release" were material terms that the parties left open for future negotiation on November 22, 2011. See *U.S. ex rel. McDermitt*, *Inc. v. Centex-Simpson Const. Co.*, *Inc.*, 34 F. Supp. 2d 397, 400 (N.D. W. Va. 1999), *aff'd sub nom.*, *United States v. Centex-Simpson Const.*, 203 F.3d 824 (4th Cir. 2000) ("A party who knowingly and voluntarily settled all claims before the court cannot later avoid the agreement by contesting ancillary terms of the agreement.").

### i.    Scope of the release

The parties in this action reached agreement on the essential terms of a settlement, including a release provision, on November 22, 2011. Plaintiff now contends that no contract was formed on November 22, 2011, because the scope of the release was a material term that the parties continued to negotiate after that date. Plaintiff relies on *Chappell v. Roth*, 353 N.C. 690, 548 S.E.2d 499 (2001), in which the parties expressly left open a release term for future negotiation. In *Chappel*, the parties agreed that defendant would pay $20,000.00 to plaintiff in exchange for a voluntary dismissal with prejudice and a "full and complete release, **mutually agreeable to both parties**." *Chappell*, 353 N.C. at 691, 548 S.E.2d at

499-500 (2001) (emphasis added).  The parties ultimately could not agree on the

terms of a release, and so no contract ever was formed.

> Thus, no meeting of the minds occurred between the parties as to a material term; and the settlement agreement did not constitute a valid, enforceable agreement.

(Id.).

In contrast to *Chappell*, the parties in this action reached a complete

settlement agreement whose terms included a release provision on November 22,

2011.  Thus, there was a meeting of the minds as to all essential terms, including

the release, and an enforceable contract came into existence.  See *Smith v. Young*

*Moving and Storage, Inc.*, 167 N.C. App. 487, 494, 606 S.E.2d 173, 178 (2004)

(distinguishing *Chappell* on the grounds that the parties in *Smith* reached an oral

settlement agreement that did not leave open a material term for future

negotiation).

This court previously has affirmed the enforcement of a settlement

agreement when the parties reached a binding oral settlement that included a

release provision, then disagreed on the language of the release provision in a

written settlement agreement.  *United States v. Centex-Simpson Const.*, 203 F.3d

824 (4th Cir. 2000) (unpublished).  This court found that continued discussion of a

release provision did not render the binding oral agreement unenforceable.

*Centex-Simpson*, 203 F.3d at *3.  Just as in *Centex-Simpson*, the parties in this

31

action reached a binding oral agreement that included a release provision, and subsequent discussion of additional release terms did not render that oral agreement unenforceable.

### ii. Choice of law/venue

The District Court correctly concluded that choice of law and choice of venue provisions were not material terms left open for negotiation on November 22, 2011.

In support of its claim that these terms were material, Plaintiff cites no decisions of this court or any North Carolina appellate court. The only case on which Plaintiff relies is an unpublished decision of the Delaware Court of Chancery applying New York law. *USA Cable v. World Wrestling Fed'n Entm't, Inc.*, 2000 WL 875682 (Del. Ch. June 27, 2000), *aff'd*, 766 A.2d 462 (Del. 2000). The District Court was not bound to follow such precedent. *John S. Clark Co., Inc. v. United Nat'l. Ins. Co.*, 304 F. Supp. 2d 758, 761 n. 1 (M.D. N.C. 2004). In addition, *USA Cable* can be distinguished factually because the parties in that case were negotiating a complex agreement to govern a substantial and ongoing business relationship.

Contrary to Plaintiff's claim that these provisions were of "paramount importance," there is no evidence that either party even mentioned these terms before Plaintiff drafted the written settlement agreement. Thus, the parties did not

expressly leave open these terms for future negotiation on November 22, 2011.

Plaintiff's general counsel, Joseph Ferraro, acknowledged that a New York choice

of law provision is not always important to Plaintiff.  (J.A. 513).  Indeed, Plaintiff

has consistently taken the position that this action is governed not by the

substantive law of New York, but by the substantive law of North Carolina.  (J.A.

512-13).

The District Court correctly found that the parties reached agreement on the

essential terms of a settlement agreement on November 22, 2011.  Subsequent

negotiations regarding non-material terms did not render that contract

unenforceable.  *Hoffstot v. Dickinson*, 166 F.2d 36, 39 (4th Cir. 1948), citing

*Townsend v. Stick*, 158 F.2d 142, 145 (4th Cir. 1946).  Nor can Plaintiff avoid the

contract by belatedly contesting provisions that it did not deem material at the time

of contracting.  *U.S. ex rel. McDermitt*, *Inc. v. Centex-Simpson Const. Co*., *Inc.*, 34

F. Supp. 2d 397, 400 (N.D.W.Va. 1999), *aff'd sub nom.*, *United States v. Centex-*

*Simpson Const.*, 203 F.3d 824 (4th Cir. 2000).

> **B.    The District Court's finding that the parties reached a complete
> settlement agreement is entitled to great deference to the extent
> that it rests upon assessments of witness credibility and resolution
> of conflicting permissible inferences.**

The District Court's finding that the parties reached a complete settlement

agreement on November 22, 2011, is entitled to great deference to the extent that it

rests upon assessments of witness credibility and resolution of conflicting

33

permissible inferences.  See *Warren v. Halstead Indus.*, *Inc.*, 802 F.2d 746, 752

(4th Cir. 1986), *on reh'g*, 835 F.2d 535 (4th Cir. 1988), citing *Anderson v. City of*

*Bessemer City*, *North Carolina*, 470 U.S. 564, 105 S. Ct. 1504, 1513, 84 L. Ed. 2d

518 (1985):

> In the situation where a trial judge's findings are based
> on his decision to credit the testimony of one witness
> versus another witness, if each has told a coherent and
> facially-plausible story not contradicted by extrinsic
> evidence, that finding is almost never clear error.

There is no dispute that Mr. Sharpless and Mr. Tepper each had the authority

to bind their client to a settlement agreement when they spoke on November 22,

2011.  If the attorneys reached a complete settlement agreement during that phone

call, Plaintiff is bound by that agreement.  *Harris v. Ray Johnson Const. Co.*, *Inc.*,

139 N.C. App. 827, 830, 534 S.E.2d 653, 655 (2000), citing *Foote & Davies*, *Inc.*

*v. Arnold Craven*, *Inc.*, 72 N.C. App. 591, 595, 324 S.E.2d 889, 892 (1985) (a

settlement agreement reached by an attorney with settlement authority binds the

client because "[a] principal is liable on a contract duly made when the agent acts

within the scope of his actual authority."); see also, *Napier v. Chesapeake & O. Ry.*

*Co.*, 582 F.2d 1344, 1346 (4th Cir. 1978), citing *Gilbert v. United States*, 479 F.2d

1267, 1268 (2d Cir. 1973).

Mr. Sharpless said the attorneys reached agreement on all of the terms set

forth in his e-mail of November 29, 2011.  (J.A. 411).  Mr. Tepper recalled

agreeing only to the settlement amount. (J.A. 451). Because Mr. Tepper's

settlement authority was not disputed, the critical issue before the District Court

was the credibility of these witnesses. See *J.A. 466*:

| | |
|---|---|
| The Court: | If the issue of authority is not in here, then I've got to just decide whether – who to believe, this gentleman or this gentleman. |
| Counsel for Plaintiff: | I think that's correct, Your Honor, based on the evidence and the testimony. The question – |
| The Court: | All right. |
| Counsel for Plaintiff: | – that we presented is whether a contract was formed. |

After hearing the testimony of Mr. Sharpless and Mr. Tepper, observing the

witnesses, and comparing their accounts to the other evidence, the District Court

resolved this factual dispute in favor of Mr. Sharpless. *See J.A. 658* (finding that

the parties reached agreement on all material settlement terms, not just the

settlement amount, during the phone call of November 22, 2011). Given the

District Court's superior vantage point, including the ability to observe the

witnesses, this finding is due great deference and should not be disturbed.

**C. The terms and conditions of the settlement agreement can readily be determined, as they are set forth in the settlement communications and witness testimony considered by the District Court.**

The District Court correctly found that the terms and conditions of the settlement reached on November 22, 2011, can be determined.

Before November 22, 2011, the parties exchanged several written settlement offers. On November 1, 2011, Adkisson Sherbert offered to pay [          ] for a full and confidential settlement and release and dismissal of the pending litigation. (J.A. 546). On November 11, 2011, Adkisson Sherbert offered to pay [          ] in full settlement of all claims that Plaintiff might have against Adkisson Sherbert and its members, partners, and employees. (J.A. 602). The settlement would be confidential, and Plaintiff would dismiss this litigation with prejudice. (Id.). Finally, on November 14, 2011, Adkisson Sherbert made its final settlement offer of [          ] and the "Same other terms as before." (J.A. 605).

Mr. Sharpless testified that the parties agreed to settle this matter when he and Mr. Tepper spoke on November 22, 2011. (J.A. 411). Mr. Sharpless sent Mr. Tepper an e-mail confirming that agreement and outlining the material terms:

> We have agreed to settle your clients (Prospect Capital's) claims against ASA, and against CBH (separately) for [          ] from each of ASA and CBH, paid to Prospect or as they direct. The settlement document is to contain a confidentiality clause, a full release of all claims, and the lawsuits will be dismissed with prejudice, each party to bear their own costs.

36

(J.A. 614). Mr. Tepper incorporated each of these terms into a settlement agreement that was before the District Court. (J.A. 626-28).

The terms and conditions of the settlement agreement reached on November 22, 2011, therefore can be determined, and because they entirely resolved all matters in dispute between Plaintiff and Adkisson Sherbert in a comprehensive and unambiguous manner, they may be enforced as the complete agreement of the parties. The District Court correctly found that the parties reached a complete settlement agreement whose terms and conditions can be determined on November 22, 2011.

## II.    THE DISTRICT COURT CORRECTLY CONSIDERED EVIDENCE OF SETTLEMENT COMMUNICATIONS THAT SHOW THE PARTIES REACHED A BINDING SETTLEMENT AGREEMENT ON NOVEMBER 22, 2011.

Plaintiff's claim that the District Court erred by considering evidence of settlement communications is contrary to this court's precedent that required the District Court to receive such evidence. In addition, neither the parol evidence rule nor the provisions of a written settlement agreement that Plaintiff refused to sign precluded Adkisson Sherbert from submitting evidence that shows the parties entered into a binding settlement agreement on November 22, 2011.

**A.    The District Court was required to conduct an evidentiary hearing to determine whether the parties reached a complete settlement agreement on November 22, 2011.**

This court requires that a district court conduct an evidentiary hearing when there exists a factual dispute over the existence of a settlement agreement. *Hensley v. Alcon Laboratories*, *Inc.*, 277 F.3d 535, 541 (4th Cir. 2002) (citation omitted). Failure to receive such evidence constitutes reversible error.  See *Hensley*, 277 F.3d at 541; *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983); *Alexander v. Industries of the Blind*, *Inc.*, 901 F.2d 40, 41 (4th Cir. 1990).

In order to determine whether the parties reached a settlement agreement, and the terms and conditions of any such settlement agreement, a district court of necessity must receive evidence from the parties and their attorneys regarding settlement communications, including the settlement amount.  Plaintiff's claim that the District Court's consideration of such evidence "was improper and prejudicial to Prospect" evidences a willful refusal to acknowledge the nature of the inquiry that this court requires a district court to make when resolving a motion to enforce settlement agreement.  See *Hensley*, 277 F.3d at 541-42 (4th Cir. 2004) (evidentiary hearing required to determine whether parties agreed to $9,000.00 settlement); *Petty v. Timken Corp.*, 849 F.2d 130, 131 (4th Cir. 1988) (plaintiff agreed to accept $5,000.00 settlement offer after discussing it with his attorney); *Millner v. Norfolk & Western Railway Co.*, 643 F.2d 1005, 1007 (4th Cir. 1981)

38

(citing lawyer testimony regarding offers and counter-offers that culminated in agreement to settle case for $10,000.00); *Napier v. Chesapeake & O. Ry. Co.*, 582 F.2d 1344, 1346 (4th Cir. 1978) (discussing whether attorney had authority to settle the case for $1,500.00); *Wood v. Virginia Hauling Co*., 528 F.2d 423, 424 (4th Cir. 1975) (quoting settlement communications in which attorney confirmed settlement agreement for "$30,000 plus all taxable costs").  Absent such evidence, the district court cannot determine whether the parties reached a complete settlement agreement whose terms and conditions can be enforced.  See *Order of March 26*, *2012*, *J.A. 313-14* (finding that an order prohibiting Adkisson Sherbert from submitting unredacted settlement communications "would make the Court's determination of whether there was a settlement agreement here, and what its terms and conditions were, extremely difficult, if not impossible.").

In the face of precedent requiring the District Court to hear evidence of settlement communications, including the terms and conditions of any settlement agreement, Plaintiff cites no instance in which any court ever has held that it was error for a trial court to receive such evidence when resolving a factual dispute over the existence of a settlement agreement.  Plaintiff instead cites cases that consider whether a party would be prejudiced if a settlement agreement is disclosed to a jury at trial.  See *Brief of Appellant*, pp. 27-28, citing *Kennon v. Slipstreamer*, *Inc.* 794 F.2d 1067, 1070 (5th Cir. 1986) (trial court erred by telling

39

jury that plaintiff settled with two defendants for $10.00 apiece); *Cooper Tire &*
*Rubber Co. v. Farese*, 2008 WL 4285546, * 2 (N.D. Miss. Sept. 12, 2008)
(granting motion in limine to prohibit disclosure of settlement amount to jury);
*Ford v. Gordon*, 990 S.W.2d 83, 87 (Mo. Ct. App. 1999) (trial court erred by
permitting jury to hear evidence regarding settlement agreement that plaintiff
reached in prior personal injury action); *Peterson v. Morton F. Plant Hosp. Ass'n,*
*Inc.*, 656 So. 2d 501, 503 (Fla. Dist. Ct. App. 1995), *rev. denied*, 664 So. 2d 249
(Fla. 1995) (trial court erred by denying plaintiff's motion in limine and permitting
one defendant to introduce evidence regarding a settlement agreement between
plaintiff and another defendant).  These cases are inapposite to an evidentiary
hearing on a motion to enforce settlement agreement, where the district court's
very task is to resolve a factual dispute regarding the existence of a settlement
agreement.

Finally, there is no merit to Plaintiff's contention that evidence of the
settlement amount caused Plaintiff to suffer undue prejudice "with respect to
Prospect's dealings with the other Defendants in this case."  *Brief of Appellant*, p.
27.  Documents containing the settlement amount were filed under seal pursuant to
court order.  (J.A. 314-15).  The District Court instructed the parties not to disclose
the settlement amount at the hearings on the motion to enforce settlement
agreement.  See *Transcript of Hearing of June 20, 2012, J.A. 318* (District Court

40

tells parties, "What we're going to do is not discuss any of the economic terms with regard to the settlement in any way."). See also, *Transcript of Hearing of August 15, 2012, J.A. 406-07* (witness assures District Court "I will steer clear of any numbers" after District Court raised concerns about maintaining the confidentiality of the settlement amount). While the District Court was under no duty to keep the settlement amount confidential, the District Court obtained the evidence necessary to resolve the Motion to Enforce Settlement Agreement while ensuring that no other party gained access to the settlement amount.

For these reasons, the District Court correctly considered evidence of settlement communications because the court was required to receive such evidence when resolving a factual dispute regarding the existence of a settlement agreement.

**B.    Neither the parol evidence rule nor the provisions of a written settlement agreement that Plaintiff refused to sign precluded Adkisson Sherbert from submitting evidence that the parties reached a binding settlement agreement on November 22, 2011.**

Neither the parol evidence rule nor the provisions of a written settlement agreement that Plaintiff refused to sign in January 2012 bar the admission of evidence that shows Adkisson Sherbert and Plaintiff entered into a binding oral agreement on November 22, 2011.

The parol evidence rule did not bar admission of settlement communications because the written settlement agreement never became an effective instrument.

41

"The parol evidence rule presupposes the existence of a legally effective written instrument." *Bailey v. Westmoreland*, 251 N.C. 843, 845, 112 S.E.2d 517, 519 (1960), citing *Stansbury*, *North Carolina Evidence*, § 257. The rule "has no place in any inquiry unless the court has before it some ascertained paper beyond question binding and of full effect." *Bailey*, 251 N.C. at 845, 112 S.E.2d at 519-20 (citations omitted). The written settlement agreement provides that it will become effective upon its execution by the parties. Plaintiff's decision not to sign the written settlement agreement had no effect on the binding oral settlement agreement reached on November 22, 2011. *Laing v. Lewis*, 142 N.C. App. 336, 337-38, 542 S.E.2d 301, 302-03 (2001). But it did prevent the written settlement agreement from becoming a legally effective written instrument. The parol evidence rule thus had no application at the hearing on Adkisson Sherbert's motion to enforce the oral settlement agreement of November 22, 2011. Plaintiff's effort to invoke the parol evidence rule even as it denies that the parties ever entered into an enforceable written contract is absurd.

For the same reason, the written settlement agreement did not bar admission of settlement communications because the written settlement agreement never became a legally binding contract. (If it had, the parties would not be before this court). Plaintiff refused to sign the written settlement agreement in January 2012. That had no effect on the binding oral settlement agreement the parties reached in

42

November 2011. *Smith v. Young Moving & Storage*, *Inc.*, 167 N.C. App. 487, 494, 606 S.E.2d 173, 178 (2004) (an oral settlement agreement remains binding and enforceable when a party refuses to sign a written settlement agreement memorializing its terms). But because the written settlement agreement provided that it would become effective upon its execution by the parties, Plaintiff's refusal to sign the written settlement agreement prevented that document from becoming a legally binding contract. Far from being "dispositive," as Plaintiff claims (*Brief of Appellant*, p. 20), the document had no bearing on the admissibility of evidence at a motion to enforce the binding oral settlement agreement reached on November 22, 2011. Plaintiff's claim that a merger and integration clause in a document whose legal effect Plaintiff denies bars evidence of the oral agreement of November 22, 2011, reflects its continuing refusal to acknowledge that the agreement in question was reached (and complete) on November 22, 2012.

For these reasons, the District Court correctly received evidence of settlement communications in order to determine that the parties reached a complete settlement agreement on November 22, 2011.

43

### III.   THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFF IS JUDICIALLY ESTOPPED FROM DENYING THAT THE PARTIES AGREED TO THE MATERIAL TERMS OF A SETTLEMENT.

The District Court correctly concluded that Plaintiff is judicially estopped from denying the existence of a settlement agreement when Plaintiff previously represented that the parties had reached agreement on the material terms of a settlement in order to obtain extensions of time in which to respond to Adkisson Sherbert's Motion to Dismiss.

The purpose of the judicial estoppel doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) (internal citation omitted).  The doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (Id.), quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000).

The doctrine of judicial estoppel is "inherently flexible," and many factors can affect a court's decision whether to invoke the doctrine. *Powell v. City of Newton*, 364 N.C. 562, 569, 703 S.E.2d 723, 728 (2010), *reh'g denied*, 706 S.E.2d 241 (2011).  However, several factors typically inform the decision whether to apply the doctrine in a particular case:

44

> First, a party's later position must be 'clearly
> inconsistent' with its earlier position.  Second, courts
> regularly inquire whether the party has succeeded in
> persuading a court to accept that party's earlier position,
> so that judicial acceptance of an inconsistent position in a
> later proceeding would create 'the perception that either
> the first or the second court was misled.'

*New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1815, 147 L. Ed. 2d 164, citing

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) (internal

citations omitted).  Courts also ask whether the party seeking to assert an

inconsistent position would derive an unfair advantage or impose an unfair

detriment on the opposing party if not estopped.  *New Hampshire*, 532 U.S. at 751,

121 S. Ct. at 1815, 147 L. Ed. 2d 164 (citations omitted).

In this matter, the District Court found that Plaintiff has taken inconsistent

positions regarding whether the parties agreed to the material terms of a settlement.

On November 22, 2011, Plaintiff represented to the Court that:

> 2.  **Prospect and ASA (collectively the 'Settling
>     Parties') have agreed to the principal terms of a
>     settlement agreement**, but require additional time
>     to complete the drafting and execution of the
>     settlement agreement.
>
> 3.  **The Settling Parties negotiated the material
>     terms of the settlement** after prospect filed its
>     Second Amended Complaint on October 14, 2011
>     and through the time when ASA filed its Renewed
>     Motion to Dismiss on November 11, 2011.

(J.A. 287) (emphasis added).  On December 29, 2011, Plaintiff again represented

that:

45

      2.      Prospect and ASA (collectively the "Settling Parties") have agreed to the principal terms of a settlement agreement, but require additional time to complete the drafting and execution of the settlement agreement.

Plaintiff further represented that:

      5.      The Settling Parties have concluded their settlement negotiations and now need to fully execute the Settlement Agreement.

      6.      Due to the holidays, no individual with authority to sign on behalf of Prospect will be available to execute the Settlement Agreement prior to the January 3, 2012, deadline to respond to ASA's Renewed Motion to Dismiss.

      7.      Accordingly and for the forgoing reasons, Prospect respectfully requests a ten-day extension of the January 3, 2012 deadline **for Prospect to execute the Settlement Agreement and discontinue this action**.

(J.A. 291) (emphasis added).  Plaintiff now insists that the parties never agreed to the material terms of a settlement.  This cannot be reconciled with Plaintiff's prior representations to the contrary.  Therefore, the District Court correctly concluded that Plaintiff has taken inconsistent positions on whether the parties agreed to the material terms of a settlement agreement.

Plaintiff argues that "Neither filing suggests the existence of any settlement agreement on November 22, 2011, or at any other time."  *Brief of Appellant*, p. 45. This contradicts the testimony of Mr. Tepper, who acknowledged that the motion of December 29, 2011, gave no indication that the settlement agreement was in any

respect incomplete or uncertain.  (J.A. 481).  In addition, Plaintiff entirely omits

the following representation, found in each motion:

> 2.    Prospect and ASA (collectively the "Settling
>        Parties") have agreed to the principal terms of a
>        settlement agreement …

(J.A. 290, 642).  This representation closely tracks the legal definition of a

contract.  See *Harris v. Ray Johnson Const. Co.*, *Inc.*, 139 N.C. App. 827, 829, 534

S.E.2d 653, 654 (2000), citing *Northington v. Michelotti*, 121 N.C. App. 180, 184,

464 S.E.2d 711, 714 (1995) ("[A] valid contract exists only where there has been a

meeting of the minds as to all essential terms of the agreement.").  In its Order, the

District Court twice quoted Plaintiff's representation that the parties "have agreed

to the principal terms of a settlement agreement."  (J.A. 654, 656).  A fair inference

to be drawn from Plaintiff's failure to directly address this representation is that

Plaintiff recognizes that the representation contradicts its claim that "[n]either

filing suggests the existence of any settlement agreement on November 22, 2011,

or at any other time."  *Brief of Appellant*, p. 45.  The District Court correctly found

that Plaintiff has taken inconsistent positions regarding whether the parties agreed

to the material terms of a settlement.

Regarding the second factor, Plaintiff succeeded in persuading the Court to

accept its earlier position.  Plaintiff made its representations in support of two

motions for extension of time in which to respond to Adkisson Sherbert's Motion

to Dismiss. In each instance, the court granted the motion for extension of time. By now asserting a contrary position, Plaintiff implicates the very concern that lies at the heart of the judicial estoppel doctrine: if the District Court had accepted Plaintiff's current position, that the parties did not reach agreement on the material terms of a settlement, that would create the perception that either the first or the second court was misled.

Regarding the third factor, Plaintiff would derive an unfair advantage and impose an unfair detriment on Adkisson Sherbert. By its representations that the parties had agreed to the material terms of a settlement, Plaintiff obtained multiple extensions of time in which to respond to the Motion to Dismiss. Also, as the District Court noted, permitting Plaintiff to force Adkisson Sherbert to "begin its settlement negotiations anew" would impose an unfair detriment on Adkisson Sherbert. See *Powell v. City of Newton*, 364 N.C. 562, 569, 703 S.E.2d 723, 729 (2010), *reh'g denied*, 706 S.E.2d 241 (2011) (failure to estop party from reversing its position regarding the existence of a binding settlement agreement would give that party "unfair power to extract additional concessions" from the opposing party).

The facts in this case are similar to those in *Powell*, where the plaintiff affirmed to the trial court that the parties had agreed to the settlement, the defendant paid over the settlement funds to the plaintiff's attorney, and plaintiff

thereafter refused to sign the written settlement agreement.  In those circumstances, the North Carolina Supreme Court held that the doctrine of judicial estoppel applied to prevent the plaintiff from denying the existence of a settlement agreement.  See *Powell v. City of Newton*, 364 N.C. 562, 569, 703 S.E.2d 723, 729 (2010) ("Plaintiff's later refusal to execute the written agreement or be bound by it is plainly inconsistent with his statement to the court.").

The District Court correctly concluded that Plaintiff is judicially estopped from denying the existence of a settlement agreement.

## IV.  THE TRIAL COURT CORRECTLY CONCLUDED THAT ADKISSON SHERBERT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT WAS NOT BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL.

The District Court correctly concluded that Adkisson Sherbert is not collaterally estopped from seeking to enforce the settlement agreement that the parties reached on November 22, 2011.  In fact, Plaintiff has failed to satisfy any of the elements of collateral estoppel.

### A.    No final judgment on the merits.

The relevant state court proceeding has not resulted in "a final judgment on the merits," as required by North Carolina law.  *McDonald v. Skeen*, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211 (2002), *rev. denied*, 356 N.C. 437, 571 S.E.2d 222 (2002), citing *Thomas M. McInnis & Associates, Inc. v. Hall*, 318 N.C. 421, 349 S.E.2d 552 (1986).  "A final judgment is one that determines the entire

49

controversy between the parties, leaving nothing to be decided by the trial court."
*Ratchford v. C.C. Mangum, Inc.*, 150 N.C. App. 197, 199, 564 S.E.2d 245, 247 (2002), citing *Ledford v. Asheville Housing Authority*, 125 N.C. App. 597, 598-99, 482 S.E.2d 544, 545, *disc. rev. denied*, 346 N.C. 280, 487 S.E.2d 550 (1997). Plaintiff does not claim that the state court action Plaintiff brought against CBH has reached a final judgment on the merits that determines the entire controversy between the parties.

Plaintiff instead contends that the denial of a motion to enforce settlement agreement can be a final judgment on the merits for the purposes of collateral estoppel. Plaintiff cites no case in which any court has so held. In fact, the denial of a motion to enforce settlement agreement is not a final judgment on the merits. See *Milton v. Thompson*, 170 N.C. App. 176, 179, 611 S.E.2d 474, 477 (2005) (appeal of the denial of a motion to enforce settlement agreement deemed interlocutory because it does not dispose of the case but requires further action by the trial court to finally determine the rights of the parties).

Even if the denial of a motion to enforce a settlement agreement could be a final judgment on the merits for the purposes of collateral estoppel, Plaintiff has failed to show that the state court denied CBH's motion to enforce settlement agreement on its merits. Without even reviewing the material submitted by the parties (J.A. 395), the state court indicated that it generally would not enforce a

50

settlement agreement absent a signed writing (J.A. 387). This is contrary to the law of North Carolina and the law of this court. See *Alexander v. Industries of the Blind*, *Inc.*, 901 F.2d 40, 41 (4th Cir. 1990), citing *Petty v. Timken*, *Corp.*, 849 F.2d 130 (4th Cir. 1988) ("Such a refusal to enforce any oral settlement agreement is contrary to circuit precedent.").

### B.   Issue in question not identical.

Plaintiff has failed to show that the issue in question before the state court was identical to the issue in question before the District Court. Plaintiff provides no citation to the Joint Appendix in support of its claim that CBH before the state court relied upon "the same evidence" as Adkisson Sherbert before the District Court. *Brief of Appellant*, p. 16. Plaintiff cites a partial transcript that indicates the parties filed certain documents with the state court. (J.A. 394-95). However, Plaintiff failed to present those documents to the District Court. Nor are they included in the Joint Appendix. Therefore, Plaintiff has failed to show that the issue in question before the state court was identical to the issue in question before the District Court. In addition, the issue before the state court was not identical to the issue before the District Court because there is no evidence that Plaintiff ever represented to the state court that the parties had agreed to the principal terms of a settlement agreement.

## C.    Parties not in privity.

Nor has Plaintiff shown that Adkisson Sherbert and CBH were in privity in regards to the state court action.  See *Workman v. Rutherford Elec. Membership Corp.*, 170 N.C. App. 481, 492, 613 S.E.2d 243, 251 (2005), citing *Moore v. Young*, 260 N.C. 654, 133 S.E.2d 510 (1963) ("In the context of collateral estoppel and *res judicata*, the term privity indicates a mutual or successive relationship to the same property rights.").  Adkisson Sherbert and CBH are separate entities, there is no evidence that they held any property rights in common, and so they are not in privity.  Nor can Plaintiff avail itself of the exception to the privity requirement, as there is no evidence that Adkisson Sherbert controlled the state court litigation and "had a proprietary interest in the judgment or in the determination of a question of law or fact on the same subject matter."  *Brief of Appellant*, *p. 31*, citing *Workman*, 715 S.E.2d at 251.  Plaintiff claims that Adkisson Sherbert had a proprietary interest in the state court action because if the state court granted CBH's motion to enforce settlement agreement, Adkisson Sherbert would have offered that ruling in support of its own Motion to Enforce Settlement Agreement before the District Court. *Brief of Appellant*, p. 31.  This argument ignores the very meaning of the word "proprietary."  See *Ross v. Ross*, 715 S.E.2d 859, 863 (N.C. App. 2011), citing *Black's Law Dictionary* 1219-20

52

(6th ed.1990) ("The common meaning of 'proprietary' is '[b]elonging to ownership.'").

The District Court correctly found that Adkisson Sherbert is not collaterally estopped from seeking to enforce the settlement agreement that the parties reached on November 22, 2011.

**V.  THE DISTRICT COURT ERRED WHEN IT DENIED ADKISSON SHERBERT'S REQUEST THAT PROSPECT CAPITAL'S ACTION BE DISMISSED PURSUANT TO F. R. CIV. P. 41 IN CONSEQUENCE OF THE SETTLEMENT AGREEMENT REACHED ON NOVEMBER 22, 2011.**

The District Court erred when it denied Adkisson Sherbert's request that Plaintiff's action be dismissed pursuant to Rule 41(b).

District courts have inherent authority, deriving from their equity power, to enforce settlement agreements. *Hensley v. Alcon Laboratories*, 277 F.3d 535, 540 (4th Cir. 2002), citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981). A motion to enforce a settlement agreement is an action for specific enforcement of a contract. *U.S. ex rel. McDermitt*, *Inc. v. Centex-Simpson Const. Co.*, *Inc.*, 34 F. Supp. 2d 397, 399 (N.D.W.Va. 1999), *aff'd sub nom.*, *United States v. Centex-Simpson Const.*, 203 F.3d 824 (4th Cir. 2000), citing *Adams v. Johns-Manville Corp.*, 876 F.2d 702 (9th Cir.1989). Specific performance is an extraordinary equitable remedy. *Welcome Wagon*, *Inc. v. Morris*, 224 F.2d 693, 701 (4th Cir. 1955). "Equity regards and treats that as done which in good

53

conscience ought to be done." *Myers v. Stephenson*, 748 F.2d 202, 207 (4th Cir. 1984) (citation omitted).

In its Order dated August 30, 2012, the District Court determined that the parties reached agreement on a settlement whose terms include Plaintiff taking a dismissal with prejudice of all claims asserted against Adkisson Sherbert in this action. (J.A. 654, 659). However, the District Court denied Adkisson Sherbert's request that Plaintiff's claims against Adkisson Sherbert be dismissed with prejudice pursuant to Rule 41. (J.A. 661). The District Court instead ordered the parties to file a Notice of Settlement within thirty (30) days. (Id.). Plaintiff has refused to do so, just as it refused to complete the settlement. If Plaintiff's claims are not dismissed with prejudice, Adkisson Sherbert will effectively be denied the dismissal with prejudice for which it bargained.

Having concluded that Plaintiff refused to abide by a complete settlement agreement whose terms included Plaintiff taking a voluntary dismissal with prejudice of all claims asserted against Adkisson Sherbert, the District Court erred in not dismissing Plaintiff's claims pursuant to Rule 41(b).

## VI.    IF THIS COURT REVERSES THE DISTRICT COURT, THEN IT SHOULD ORDER THE COURT TO DECIDE ADKISSON SHERBERT'S MOTION TO DISMISS ON THE MERITS.

The District Court denied as moot Adkisson Sherbert's Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6). (J.A. 662).

Should this court reverse the District Court's grant of Adkisson Sherbert's Motion to Enforce Settlement Agreement, and remand this action to the District Court, the District Court should then be obligated to decide the Motion to Dismiss on the merits. The issues presented in the Motion to Dismiss will become "live" and the parties will have a legally cognizable interest in the outcome. *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011), citing *Simmons v. United Mortg. & Loan Inv.*, *LLC*, 634 F.3d 754, 763 (4th Cir. 2011).

Should this court remand this action to the District Court for further proceedings, the District Court should be required to decide the Motion to Dismiss on the merits.

## CONCLUSION

For the above reasons, Adkisson Sherbert requests that the District Court's order dated August 30, 2002, granting the Motion to Enforce Settlement Agreement be affirmed in all respects, but that the District Court be required to dismiss this matter with prejudice pursuant to F. R. Civ. P. 41(b) and, should the matter be remanded for further proceedings, that the District Court be required to decide the Motion to Dismiss on the merits.

## REQUEST FOR ORAL ARGUMENT

Appellee Adkisson Sherbert Associates, P.A., requests oral argument because oral argument will provide for a fuller understanding of the issues before

this court and so the decisional process would be significantly aided by oral

argument.

Respectfully Submitted,

/s/ Frederick K. Sharpless
Frederick K. Sharpless
SHARPLESS & STAVOLA, PA
200 South Elm Street
Post Office Box 22106
Greensboro, North Carolina  27420
(336) 333-6384

# ADDENDUM

# ADDENDUM

Pursuant to Rule 32.1(b) of the Federal Rules of Appellate Procedure and United States Court of Appeals for the Fourth Circuit Rule 32.1, Appellee Adkisson Sherbert Associates, P.A., files and serves a copy of the following unpublished opinion:  United States v. Centex-Simpson Const., 203 F.3d 824 (4th Cir. 2000).

Unpublished Disposition

203 F.3d 824

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. See CTA4 Rule 32.1.

United States Court of Appeals, Fourth Circuit.

UNITED STATES Of America, for the use of McDermitt, Incorporated, 83 Hunterstown Road, Gettysburg, Pennsylvania 17325, Plaintiff-Appellant,

v.

CENTEX-SIMPSON CONSTRUCTION COMPANY, Incorporated; Seaboard Surety Company; St. Paul Fire & Marine Insurance Company; National Union Fire Insurance Company of Pittsburg, Pennsylvania; Federal Insurance Company, Defendants-Appellees.

No. 99-1213.    |    Argued Dec. 1, 1999.    |    Decided Jan. 19, 2000.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. W. Craig Broadwater, District Judge. (CA-96-54-3).

**Attorneys and Law Firms**

William Anthony Kolibash, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, WV, for appellant.

David L. Cole, Jr., Ober, Kaler, Grimes & Shriver, P.C., Baltimore, MD, for appellees.

ON BRIEF: David B. Hamilton, Ober, Kaler, Grimes & Shriver, P.C., Baltimore, MD, for appellees.

Before MURNAGHAN and WILKINS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

**Opinion**

## OPINION

PER CURIAM.

**\*1** This case arises from a dispute between Centex-Simpson, a general contractor, and McDermitt, a subcontractor. The parties verbally settled their dispute during a telephonic conference held on the record and attended by the district court judge. Centex-Simpson agreed to pay McDermitt

$217,500, and both parties agreed to release all claims against the other. After the conference concluded, however, the parties could not agree on the language of the release provision in the written settlement agreement.

The district court granted in part Centex-Simpson's motion to enforce the settlement agreement and ordered that the written agreement include certain challenged language. The language prohibits either party from encouraging, sponsoring, suggesting or otherwise fostering any claim against the other party undertaken by any person or entity. McDermitt filed this appeal alleging that the district court abused its discretion by construing the agreement to include the "do not encourage" language in the release provision.

For the reasons discussed below, we affirm.

### I.

Centex-Simpson was awarded the general contract for construction of the U.S. Fish and Wildlife Service National Education and Training Center in Shepherdstown, West Virginia ("NETC"). In 1994, McDermitt entered into a subcontract with Centex-Simpson to provide concrete, labor, and materials for that project. A dispute arose between the parties concerning completion of the work and payment.

McDermitt filed suit against Centex-Simpson in the U.S. District Court for the Northern District of West Virginia in September of 1996. Centex-Simpson filed an answer and a counter claim against McDermitt for breach of contract concerning a different construction project, that was the State Farm Mutual Automobile Insurance Company Seabord Regional Office in Frederick, Maryland ("State Farm").

After several unsuccessful attempts to settle the disputes, the parties participated in a telephonic settlement conference before the Court on May 15, 1998. At that time, on the record and in the presence of the district court judge, Centex-Simpson and McDermitt agreed verbally to settle their dispute. The parties agreed that Centex-Simpson would pay McDermitt $217,500 in return for settlement and release of all claims, with one specific exception. A potential $31,000 claim regarding a supplier was excepted from the settlement agreement.

On May 26, 1998, McDermitt's counsel prepared a proposed written settlement agreement which provided for the release of both parties from any claims arising out of the NETC and State Farm projects. In response, Centex-Simpson's counsel

prepared a different proposed written settlement agreement. Centex-Simpson's proposal contained broader language in the release provision. In addition to the agreement to release all future claims arising out of the two construction projects, the counter-proposal also included a "do not encourage" provision:

> **\*2** McDermitt further covenants that it will in no way encourage, sponsor, suggest or otherwise foster any claim or cause of action arising out of or pertaining to the NETC project and/or State Farm Project against [any party to this Agreement or the officers of any party to this agreement] undertaken by (1) ... any party to this Agreement ... or, (4) any other person or entity.

The additional language in the release provision prevents either party from encouraging another person or entity to bring a suit related to either the NETC or State Farm construction projects.

McDermitt would not agree to the "do not encourage" language, and Centex-Simpson would not agree to remove the challenged language. In the months following the settlement conference, both parties petitioned the court to enforce the settlement agreement and to resolve the dispute over the language used in the release provision.

On January 7, 1999, the district court issued a memorandum opinion and order granting Centex-Simpson's motion and instructing the parties to comply with the written settlement agreement proposed by Centex-Simpson, including the challenged language in the release provision.

McDermitt now appeals and insists that it never agreed to the "do not encourage" restriction contained in the challenged language. McDermitt alleges that the district court abused its discretion by ordering the parties to execute an agreement which contains the challenged language in the release provision.

## II.

This court reviews the district court order enforcing the settlement agreement for abuse of discretion. *Young v. FDIC,* 103 F.3d 1180, 1194 (4th Cir.1997). We must decide whether including the "do not encourage" language in the release

provision of the written settlement agreement constitutes an abuse of discretion. We hold that it does not.

District courts possess the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement. *Petty v. Timken Corp.,* 849 F.2d 130, 132 (4th Cir.1988). Neither party disputes that a settlement was reached at the telephonic conference in May of 1998; however, during the settlement conference there was no discussion of the precise terms of the release of claims provision. The district court judge reviewed the transcript of the settlement conference and concluded that the "do not encourage" language was consistent with the general release of claims that was agreed to during the conference.

Our review of the transcript of the settlement conference and indeed the entire purpose of a "settlement" conference convince us that the parties intended to arrive at a dollar figure that would be paid by Centex-Simpson to *settle all claims between Centex-Simpson and McDermitt.* If McDermitt agreed to give up any future claims against Centex-Simpson in exchange for money, they should not be allowed now to reserve the right to goad others into similar action from the courtroom sidelines.

**\*3** The district court judge had this to say about the dispute over the language in the release provision:

> In the present case, as in the cases cited herein, the parties knew precisely what they were agreeing to at the first telephonic settlement conference. In exchange for $217,500, McDermitt agreed to release all present and future claims, with the explicit exception of a single potential claim. McDermitt had ample opportunity to inform the Court and Centex that it also intended to except any other contemplated action against Centex from the agreement but did not do so. Thus, all evidence before the court at the time of the agreement indicated the essential scope of the settlement. McDermitt agreed to settle all claims, save one, in exchange for $217,500.

By adopting the broad language contained in Centex-Simpson's draft of the release provision, the district court implicitly found that such broad language was in keeping

with the agreement reached on May 15, 1998. Nothing in the record of the original settlement conference suggests otherwise. The judge, therefore, did not abuse his discretion by construing the agreement to include the broad release language in the Centex-Simpson proposal.

The district court judgment is accordingly

*AFFIRMED.*

**Parallel Citations**

2000 WL 37751 (C.A.4 (W.Va.))

---

**End of Document**　　　© 2013 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*12,717*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>January 17, 2013</u>          <u>/s/ Frederick K. Sharpless</u>
                                        *Counsel for Appellee/Cross-Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 17th day of January, 2013, I caused this

Redacted Brief of Appellee/Cross-Appellant to be filed electronically with the

Clerk of the Court using the CM/ECF System, which will send notice of such filing

to the following registered CM/ECF users:

> Robert C. Bowers
> MOORE & VAN ALLEN, PLLC
> 100 North Tryon Street, Suite 4700
> Charlotte, North Carolina 28202
> (704) 331-3560

> Karl C. Huth, IV
> PROSPECT ADMINISTRATION, LLC
> 10 East 40th Street, 44th Floor
> New York, New York 10016
> (646) 845-6076

> *Counsel for Appellant*

I further certify that on this 17th day of January, 2013, I caused the required

copies of the Redacted Brief of Appellee/Cross-Appellant to be hand filed with the

Clerk of the Court.

/s/ Frederick K. Sharpless
*Counsel for Appellee/Cross-Appellant*